**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SHAWN DAVIS aka CHEF BIG SHAKE, | Case No.: 2:25-cv-01607-APG-EJY |
| Plaintiff | **Order Granting in Part Wells Fargo Bank, N.A.'s Motion to Dismiss** |
| v. | [ECF No. 13] |
| WELLS FARGO BANK, N.A., | |
| Defendant | |

Shawn Davis, also known as Chef Big Shake, sued Wells Fargo Bank, N.A., for claims arising from his visit to one of the bank's Henderson, Nevada branches.  Davis, an African American man, claimed that bank employees falsely accused him of attempting to deposit a fraudulent check because of his race.  He asserts claims for (1) race discrimination under 42 U.S.C. § 1981; (2) race discrimination under Nevada Revised Statutes (NRS) § 651.090; (3) intentional infliction of emotional distress (IIED); (4) defamation per se; (5) negligent hiring, supervision, and retention; (6) gross negligence; and (7) negligence per se.

Wells Fargo moves to dismiss all of Davis' claims. ECF No. 13.  I grant the motion in part and dismiss all but Davis' defamation claim.  I also deny Wells Fargo's request to dismiss the Doe and Roe defendants.  I grant Davis leave to amend his dismissed claims except for the negligence per se claim.

**I.  BACKGROUND**

Davis alleges the following facts, which I accept as true when resolving the motion to dismiss.  Davis is a celebrity chef who resides in Florida and has been a long-time Wells Fargo customer. ECF No. 11 at 5.  On July 9, 2025, Davis received a U.S. Treasury check for $20,403.78 from the Internal Revenue Service (IRS) made out to "CRD Holdings LLC" and

"Shawn Davis Sole MBR." *Id.* at 6.  The IRS issued the check as an Employee Retention Credit (ERC). *Id.* at 5.

Davis received the check after his local Wells Fargo branch in Tampa had closed for the day, and he was scheduled to travel to Las Vegas the next day. *Id.* at 6.  As a result, Davis booked an appointment for July 11, 2025 at 9:00 a.m. at a Henderson, Nevada Wells Fargo branch. *Id.*  Davis booked the appointment to open a new business account and deposit the ERC check. *Id.*

Davis arrived at the branch on the morning of his appointment and met with David Parra, a Wells Fargo business advisor. *Id.*  During the appointment, Parra explained that Davis must first open a business account to deposit the check. *Id.*  Parra requested Davis' identification as part of the process to open the new account, and after approximately 30 minutes, Parra left his desk and went into a "restricted area" of the bank. *Id.* at 6-7.

When Parra returned approximately 15 minutes later, he accused Davis of fraud, forgery, and attempting to deposit a fraudulent check. *Id.* at 7.  Davis alleges that Parra did not ask him "about the purpose" of the check, "the nature of the business" for which it was issued, or for additional information that would support the check's validity. *Id.*  Davis denied Parra's allegations, believed the accusations were due to his race, and asked to speak with the branch manager. *Id.*

Parra brought the branch manager, Georgia Bell, into the conversation and told her that Davis was attempting to deposit a fraudulent check. *Id.*  Davis states that Bell did not consider his perspective of the events, dismissed his explanation, and spoke to Davis as if she doubted his credibility. *Id.*

Davis claims that Bell told him that the bank contacted the IRS through a "special line" and verified the check was fraudulent, again accusing Davis of attempted fraud and forgery. *Id.* at 7-8 (quotation omitted). Davis further alleges that during this conversation, Bell and Parra "repeatedly interrupted [him], raised their voices," and spoke to him in an accusatory tone. *Id.* at 8. The conversation culminated with Bell and Parra ordering Davis to leave the bank in front of other customers, which caused Davis "severe embarrassment and public humiliation." *Id.* After leaving the bank, Davis "sat in his car in the parking lot and cried for nearly an hour." *Id.* On July 14, 2025, Davis received an email from Wells Fargo about a complaint filed on his behalf, but Davis had not filed a complaint with Wells Fargo. *Id.*

Three days later, Davis visited his local Wells Fargo branch in Tampa. *Id.* During that visit, Davis again presented the U.S. Treasury check for deposit, and the branch manager determined the check was valid. *Id.* Davis opened a business account with the bank and deposited the check into his new business account. *Id.*

Davis states that the Tampa branch manager advised him that Wells Fargo did not have a direct line to the IRS to verify checks. *Id.* Additionally, the branch manager informed him that the Wells Fargo internal system did not indicate that the Henderson branch had created an account for Davis or added any internal notes about Davis' interactions with the branch. *Id.*

About a week later, Davis received an email from Wells Fargo's enterprise complaints management office, closing the July 14th complaint and indicating it found "no wrongdoing had occurred at the Nevada Branch by any employee." *Id.* at 9. Davis alleges that he "suffered significant emotional distress, reputational damage, loss of dignity, and public humiliation" from the incident and he continues to relive the experience, leading him to undergo therapy. *Id.*

3

## II.  ANALYSIS

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) (quotation omitted).  A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

As the moving party, Wells Fargo has the burden to show that the plaintiff has not plausibly alleged a claim upon which relief can be granted. *Sintigo v. Pompeo*, No. 2:19-cv-00465-APG-VCF, 2020 WL 14053449, at *3 (D. Nev. July 20, 2020); *see also Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (holding that on a Federal Rule of Civil Procedure 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented"); *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006) (holding that "on a 12(b)(6) motion, the moving party bears the burden of demonstrating that the plaintiff failed to state a claim").

If I dismiss a claim, Rule 15(a)(2) provides that I should grant leave to amend "freely . . . when justice so requires."  I should deny leave to amend only if there is a reason not to allow it, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182 (1962).  Generally, "dismissal without leave to amend is improper unless it is clear . . .

that the complaint could not be saved by any amendment." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) (quotation omitted).

**A. Davis does not have standing to bring a § 1981 claim.**

Wells Fargo contends Davis lacks standing for his claims because he was attempting to deposit a check on behalf of CRD Holdings. Davis argues that he has standing because he was an intended third-party beneficiary of his attempted contracting to deposit the check and because he, not CRD Holdings, was harmed.

Under § 1981(a), "[a]ll persons . . . have the same right . . . to make and enforce contracts" regardless of race. A plaintiff bringing a § 1981 claim "must initially identify an impaired contractual relationship, . . . under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (simplified). An intended third-party beneficiary has rights under a contract and therefore can bring a § 1981 claim. *See id.* at 476 n.3.

The Supreme Court's holding in *Domino's Pizza* is controlling here. In that case, JWM Investments, Inc. entered a contract with Domino's to build four restaurants in Las Vegas. *Id.* at 472. The plaintiff, John McDonald, was the sole shareholder and president of JWM. *Id.* The contract between JWM and Domino's fractured, according to McDonald because of racial animus toward him. *Id.* at 472-73. McDonald failed to state a § 1981 claim because the only contract he identified in his complaint was between JWM and Domino's. *Id.* at 477, 479-80. The Supreme Court held that the right to make contracts under § 1981 "was not the insignificant right to act as an agent for someone else's contracting." *Id.* at 475. "Rather, it was the right . . . to give and receive contractual rights on one's own behalf." *Id.* (emphasis omitted).

Here, Davis was the sole member of CRD Holdings and was attempting to deposit a check made out to CRD Holdings. ECF No. 11 at 5-6. Thus, he was contracting on CRD

5

Holdings' behalf, not his own. Davis attempts to distinguish *Domino's Pizza* by claiming he "was personally injured by Wells Fargo's conduct." ECF No. 25 at 11. In his view, this distinguishes his case from *Domino's Pizza* where JWM, not McDonald, was injured. *Id.* However, a business is harmed if it is prevented from depositing its checks. The harm Davis faced from Wells Fargo was the same harm McDonald encountered in being discriminated against by Domino's. I therefore reject Davis' contention that there is a relevant factual difference between his case and *Domino's Pizza*. Regardless, the Supreme Court rejected a similar argument in *Domino's Pizza* where McDonald argued that the contract breach "had harmed [him] personally" and that anyone who was "an 'actual target' of discrimination" should have standing under § 1981. 546 U.S. at 473, 478. However, framing § 1981 to focus on harm or the target of discrimination "ignores the explicit statutory requirement that the plaintiff be the person whose right . . . to make and enforce contracts was impaired on account of race." *Id.* at 478 (simplified).

Davis has not sufficiently pleaded that he is an intended third-party beneficiary of the contract. He provides no authority to support the notion that the sole member of an LLC is an intended third-party beneficiary of the contracts entered into by that member on behalf of the LLC. His role as the sole member of CRD Holdings was the same as McDonald's position in JWM, and the Supreme Court explained that "the shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts." *Id.* at

477. Just as "[t]he corporate form and the rules of agency" denied McDonald rights under the JWM contract, so too do they deny Davis rights under CRD Holdings' contracts. *See id.*[1]

Wells Fargo argues Davis' standing problem applies to all his claims. But there is no basis to extend his failure to identify a contractual relationship under which he has rights beyond the § 1981 context. Accordingly, I dismiss only Davis' § 1981 claim for lack of standing. I grant leave to amend to the extent Davis wishes to add CRD Holdings, LLC as a plaintiff.

**B. If Davis amends his § 1981 claim, he may wish to address other potential problems with his claim.**

Wells Fargo also moves to dismiss Davis' § 1981 claim for failing to allege discriminatory intent. It argues Davis has not pleaded that Wells Fargo's services remained available to similarly situated individuals not in Davis' protected class. Davis responds that he does not need to plead the existence of such a comparator.

To establish a prima facie case of racial discrimination in non-employment contracts under § 1981, Davis must allege that he (1) "is a member of a protected class," (2) "attempted to contract for certain services," and (3) was "denied the right to contract for those services." *Lindsey v. SLT L.A., LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006). In employment cases, the Ninth Circuit has also applied a fourth element, that "such services remained available to similarly-

---

[1] Davis' citation to *Di-az v. Tesla, Inc.* is unpersuasive. No. 3:17-cv-06748-WHO, 2019 WL 7311990 (N.D. Cal. Dec. 30, 2019). There, the plaintiff worked for a staffing agency, which contracted with an intermediary to assign its temporary workers to job sites. *Id.* at *1-2. The court held that the plaintiff was part of the class of people intended to benefit under the contract between the staffing agency and the intermediary. *Id.* at *11. There is no dispute that intended third-party beneficiaries can bring a § 1981 claim, but Davis has not sufficiently alleged facts to claim he is one. Davis' argument that he is the sole member of CRD Holdings is distinguishable from the facts of *Di-az* where the plaintiff benefited from the staffing contract by receiving pay for work he performed under the contract. Davis is more like the plaintiff in *Domino's Pizza* than the plaintiff in *Di-az*.

situated individuals" not in the plaintiff's protected class. *Id.*  The Ninth Circuit noted that the Seventh and Sixth Circuits disagree on whether the fourth element is required outside the employment context. *Id.*  The Sixth Circuit reasoned that in the commercial context, the fourth element "narrows the methods available to a plaintiff to prove intentional discrimination" by "foreclosing other methods of proving intentional discrimination" and is "particularly onerous because of the difficulty in replicating a particular [customer's] experience." *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001); *see Makhzoomi v. Sw. Airlines Co.*, 419 F. Supp. 3d 1136, 1148-49 (N.D. Cal. 2019) (applying the Sixth Circuit's test).  The Sixth Circuit adopted a two-prong test to state a prima facie race discrimination claim.  A plaintiff can use either a similarly-situated individual as a comparator or establish the "plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory." *Christian*, 252 F.3d at 872.  This test "allows a plaintiff to state a claim when similarly situated persons are not available for comparison, as will often be the case in the commercial establishment context." *Id.* at 873.  The Ninth Circuit found this reasoning "compelling," but did not decide whether to adopt it for commercial, non-employment contexts. *Lindsey*, 447 F.3d at 1145.

Regardless of the test used, Davis must plausibly allege that Wells Fargo intentionally discriminated against him because of his race. *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989); *see also Gen. Bldg. Contractors Ass'n v. Pa.*, 458 U.S. 375, 391 (1982).  Davis' burden to establish a prima facie case is "minimal." *Lindsey*, 447 F.3d at 1144 (quotations omitted).  But

Davis' allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Bell Atl.*, 550 U.S. at 555.

Davis alleges he was unable "to make and enforce contracts on the same terms as enjoyed by white persons." ECF No. 11 at 10.  He also claims that "Wells Fargo's conduct in discriminating against [him] due to his race was intentional." *Id.*  These allegations are conclusory.  Throughout his complaint, Davis makes similarly conclusory statements that the conduct he faced was due to his race. *See id.* at 7-8 (stating at multiple points that Parra's or Bell's conduct was "due to Plaintiff's African American race"); *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) ("Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race.  This is not sufficient.")

As I am dismissing Davis' § 1981 claim with leave to amend due to lack of standing, I need not decide the appropriate test for alleging discriminatory intent in this context or whether Davis has sufficiently alleged discriminatory intent.  However, I will give Davis an opportunity to amend this claim if he can allege facts that demonstrate discriminatory intent.

**C.  I dismiss Davis' public accommodation claim under NRS § 651.090 and grant him leave to amend.**

Wells Fargo contends Davis' allegations of race discrimination under NRS § 651.090 are speculative and conclusory.  Davis argues that he has sufficiently pleaded this claim.

"All persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation, without discrimination or segregation on the ground of race, [or] color . . . ." NRS § 651.070.  NRS § 651.090(1)(a) and (b) provide a private right of action for violations of § 651.070.  The

9

Supreme Court of Nevada looks to federal law for guidance when interpreting Nevada anti-discrimination statutes. *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005).

Similar to his § 1981 claim, Davis must allege facts under his public accommodation claim from which I can plausibly infer that Wells Fargo's actions were motivated by Davis' race. *See Lizardo*, 270 F.3d at 106; *Kindle v. AAA Auto. Club of S. Cal.*, No. 2:20-cv-06470-RGK-SHK, 2020 WL 11272549, at *4 (C.D. Cal. Oct. 19, 2020). Some courts apply the same discriminatory intent standard to § 1981 and public accommodation claims. *Lizardo*, 270 F.3d at 106. Davis can meet this requirement by alleging circumstantial evidence of racial animus, such as non-conclusory allegations that services at the Henderson Wells Fargo were available to similarly situated individuals outside Davis' protected class or that those individuals were treated more favorably than him. *See Kisob v. Wynn Las Vegas, LLC*, No. 2:25-cv-00327-APG-DJA, 2025 WL 3158497, at *2 (D. Nev. Nov. 10, 2025); *Jones v. Brouwer*, No. cv-20-7067-MWF-PLAX, 2020 WL 7127125, at *2-3 (C.D. Cal. Oct. 16, 2020), *aff'd sub nom. Jones v. Brouwers*, 859 F. App'x 793 (9th Cir. 2021).

Davis has not adequately pleaded discriminatory intent or racial animus by Wells Fargo. As explained above, Davis' allegations are conclusory and therefore insufficient. *See, e.g.*, ECF No. 11 at 11 (alleging "Wells Fargo's actions, through its employees Mr. Parra and Ms. Bell, were racially discriminatory"). Additionally, Davis' allegations that Parra and Bell lied to him about a "special line," that they interrupted and talked over him, and that a complaint was filed on his behalf without his knowledge are not sufficient to raise an inference of discriminatory intent. "Although mistreatment by defendants is not irrelevant in assessing the strength of plaintiffs' circumstantial evidence of race-based animus, it is certainly not sufficient to establish it." *Lizardo*, 270 F.3d at 102-03 (finding little support for an inference of discriminatory intent

10

even with evidence of a discriminatory pretext where a restaurant hostess failed to greet a guest, responded curtly to accusations of discrimination, and had security remove the plaintiff).  Nor has Davis sufficiently alleged that similarly situated individuals outside his protected class were treated more favorably than him. *See Dunn v. Albertsons*, No. 2:16-cv-02194-GMN-PAL, 2017 WL 3470573, at *3 (D. Nev. Aug. 10, 2017) (dismissing a Title II claim despite the plaintiff alleging he was denied the full benefits and enjoyment of a grocery store because he failed to allege he was treated less favorably than similarly situated persons who were not in his protected class).  Davis has not alleged Wells Fargo's actions were motivated by race beyond conclusory allegations, so I dismiss his NRS § 651.090 claim.  Because amendment would not be futile, I grant Davis leave to amend this claim.

**D.  I dismiss Davis' IIED claim with leave to amend.**

Wells Fargo argues Davis' IIED claim should be dismissed because he does not sufficiently allege extreme and outrageous conduct by Wells Fargo or that he suffered severe emotional distress.  Davis responds that he has sufficiently alleged the elements of an IIED claim.

To state a plausible IIED claim, Davis must allege "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) severe or extreme emotional distress suffered by the plaintiff; and (3) actual or proximate causation." *Jordan v. State ex rel. Dep't of Motor Vehicles and Pub. Safety*, 110 P.3d 30, 52 (Nev. 2005) (en banc), *abrogated on other grounds by Buzz Stew, LLC v. City of N. L.V.*, 181 P.3d 670 (Nev. 2008) (en banc).  I make the initial determination as to whether a reasonable jury could find conduct to be extreme and outrageous. *See Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993) (citing Restatement (Second) of Torts § 46 cmts. h, j) ("[W]hether defendants[']

11

conduct may reasonably be regarded as so extreme and outrageous as to permit recovery are questions for the Court to answer."). Extreme and outrageous conduct "is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (simplified). But "persons must necessarily be expected and required to be hardened . . . to occasional acts that are definitely inconsiderate and unkind." *Id.* (simplified). IIED liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Welder v. Univ. of S. Nev.*, 833 F. Supp. 2d 1240, 1246 (D. Nev. 2011) (simplified).

Furthermore, "in cases where emotional distress damages are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of a physical impact, proof of serious emotional distress causing physical injury or illness must be presented." *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) (simplified). The physical impact requirement may not be satisfied by pleading "general physical or emotional discomfort." *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 483 (Nev. 1993); *see also Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 933 (D. Nev. 2010) (finding that insomnia, nightmares, general nervousness, and "a purely emotionally upsetting situation" are insufficient to support an IIED claim under Nevada law, and explaining that objectively verifiable evidence, like a need for "psychiatric assistance or medication," are necessary to meet the physical manifestation requirement). There is no requirement to plead a medical diagnosis or be prescribed medication. *Franchise Tax Bd. of Cal. v. Hyatt*, 335 P.3d 125, 148 (Nev. 2014) (en banc), *overruled on other grounds by Franchise Tax Bd. of Cal. v. Hyatt*, 578 U.S. 171 (2016). Other objectively verifiable indicia, such as allegations of behavioral changes or seeking medical or psychiatric assistance after the incident, may sufficiently plead

severe emotional distress. *Id.* at 148-49; *Watson v. L.V. Valley Water Dist.*, 378 F. Supp. 2d 1269, 1279 (D. Nev. 2005).

Davis alleges he "is undergoing therapy" to address the emotional toll from his interaction at Wells Fargo, so he has sufficiently pleaded the objectively verifiable indicia necessary to establish severe emotional distress. ECF No. 11 at 9, 12.

To allege extreme and outrageous conduct by Wells Fargo, Davis claims the Wells Fargo employees "repeatedly interrupted [him], raised their voices, and spoke over [him] in a dismissive, accusatory tone" before ordering him to leave the bank. *Id.* at 8. These are allegations of "insults, indignities, . . . annoyances, [and] petty oppressions," which are insufficient to plead extreme and outrageous conduct. *Welder*, 833 F. Supp. 2d at 1246 (simplified). Davis' allegation that he was treated in a "humiliating, degrading, and hostile manner" is conclusory. ECF No. 11 at 12. The factual allegations establish a commercial interaction that was undignified, unkind, and inconsiderate, but was not utterly intolerable or outside all possible bounds of decency. *See Maduike*, 953 P.2d at 26; *Warren v. Tree*, No. 2:23-cv-01377-APG-EJY, 2024 WL 147787, at *3 (D. Nev. Jan. 11, 2024).

Davis' strongest allegation is that Wells Fargo employees "falsely accused [him] of attempting to deposit a fraudulent U.S. Treasury check and of committing fraud and/or forgery." ECF No. 11 at 12. Defamatory accusations are not always extreme and outrageous, however, and Davis' defamation allegations are distinguishable in severity from cases where there was IIED liability. *Compare Colquhoun v. BHC Montevista Hosp., Inc.*, No. 2:10-cv-00144-RLH-PAL, 2010 WL 2346607, at *3 (D. Nev. June 9, 2010) (granting the motion to dismiss where one of the plaintiff's claims for IIED liability was that she was wrongfully accused of stealing equipment), *with Posadas v. City of Reno*, 851 P.2d 438, 441, 444 (Nev. 1993) (holding it was a

13

jury question whether a police chief's press release that falsely stated a police officer committed perjury was extreme and outrageous).  Because Davis has not alleged extreme and outrageous conduct by Wells Fargo, I dismiss his claim without prejudice and grant him leave to amend this claim if he can allege facts to do so.

### E.  I deny the motion to dismiss Davis' defamation per se claim.

Wells Fargo moves to dismiss Davis' defamation per se claim, arguing that Davis is a public figure and has not pleaded actual malice.  Davis counters that he is not a public figure, and therefore he does not need to plead actual malice.

To state a claim for defamation, a plaintiff must allege: (1) the defendant made a false and defamatory statement of fact about the plaintiff; "(2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pope*, 114 P.3d at 282.  A statement is defamatory if it "would tend to lower the subject in the estimation of the community, excite derogatory opinions about the subject, and hold the subject up to contempt." *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 88 (Nev. 2002) (quotation omitted).  To allege a claim for defamation per se, the defamatory statement must fall into one of four categories: (1) the plaintiff committed a crime; (2) an allegation injurious to the plaintiff's trade, business, profession, or office; (3) the plaintiff contracted a loathsome disease; or (4) a woman's unchastity. *Branda v. Sanford*, 637 P.2d 1223, 1225 (Nev. 1981).

The First Amendment, applicable to the states through the Fourteenth Amendment, safeguards the freedom of speech and requires public figures to allege the defendant acted with actual malice. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 264, 279-80 (1964); *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 155 (1967) (extending the actual malice standard for government officials in *N.Y. Times* to public figures); *see Nev. Indep. Broad. Corp. v. Allen*, 664 P.2d 337, 344 (Nev.

14

1983) (recognizing the rules established in *New York Times* and *Curtis Publishing*); *see also Wynn v. Smith*, 16 P.3d 424, 430 (Nev. 2001) (en banc) (explaining the actual malice standard is "required by the U.S. Constitution when the subject of the alleged defamation is a public figure"). Actual malice requires that the defendant made the defamatory statement either knowing it was false or with reckless disregard for the statement's falsity. *Pegasus*, 57 P.3d at 92. The law recognizes two categories of public figures: general purpose and limited purpose. *Id.* at 91 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351-52 (1974)). Regardless of the type, public figures must allege actual malice because they can combat defamatory messages and reduce potential harm to their reputations through "significantly greater access to the channels of effective communication" than private individuals. *Gertz*, 418 U.S. at 344. Nevada has adopted the public-figure test outlined in *Gertz*. *Pegasus*, 57 P.3d at 91.

A general purpose public figure has "achieve[d] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." *Gertz*, 418 U.S. at 351. General purpose public figures attain this status "by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention." *Id.* at 342. Limited purpose public figures are considered public figures for only "a limited range of issues." *Id.* at 351. To determine whether an individual is a limited purpose public figure, I "consider whether (i) a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected [him]self into the controversy for the purpose of influencing the controversy's ultimate resolution." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 266 (9th Cir. 2013).

Davis alleges that Wells Fargo accused him of committing a crime by attempting to deposit a fraudulent check. ECF No. 11 at 13. Wells Fargo challenges Davis' defamation claim

15

only on the basis that he did not plead actual malice, which it contends is necessary because Davis is a public figure based on his own descriptions of himself in the complaint. ECF No. 13 at 13-15.

The amended complaint alleges that Davis is a "renowned celebrity chef," "was featured" on the television show *Shark Tank*, is a "successful restaurateur," and "manages a thriving private chef business." ECF No. 11 at 5.  Further, Davis owns a "successful food product business that markets high-demand products in prominent, national marketplaces such as the QVC® Television Network." *Id.*  Despite describing himself as "renowned" and a "celebrity," Davis argues in his opposition that he is not a public figure because his fame "is limited to the culinary industry." ECF No. 25 at 19.

Self-identifying as a celebrity does not automatically make Davis a public figure under the law.  "The determination of whether a party is a public figure . . . is an issue of law to be decided by the court." *Oracle USA, Inc. v. Rimini St., Inc.*, 6 F. Supp. 3d 1108, 1129 (D. Nev. 2014).  A general purpose public figure's fame exceeds merely being in the public eye or being successful in one's career. *See Hutchinson v. Proxmire*, 443 U.S. 111, 134-36 (1979) (finding a research behavioral scientist who received federal grants and published articles was neither a limited purpose nor general purpose public figure); *Gertz*, 418 U.S. at 325-26, 351-52 (finding an attorney, "well known in some circles," was not a public figure despite publishing books and articles).  Davis alleges that he appeared on one episode of a business reality television show and markets his products on national platforms. ECF No. 11 at 5.  These activities provide Davis with public exposure but not necessarily the level of influence associated with general purpose public figures that would enable him to combat defamatory statements. *See Curtis Pub.*, 388 U.S. at 135-36, 155 (1967) (holding that a University of Georgia athletic director, who was a "well-

known and respected figure in coaching ranks" and was negotiating for a professional coaching position, was a public figure because he "commanded sufficient continuing public interest" in his role as athletic director of a large university and as the school's former head football coach); *Pacquiao v. Mayweather*, 803 F. Supp. 2d 1208, 1213-14 (D. Nev. 2011) (finding a "world famous boxer" to be a public figure); *Carlisle v. Fawcett Publ'ns, Inc.*, 20 Cal. Rptr. 405, 414 (Cal. Ct. App. 1962) (finding that public figures include "actors and actresses, professional athletes, public officers, noted inventors, explorers, [and] war heroes").

Nor has Wells Fargo shown that Davis' allegations make him a limited purpose public figure. The test for limited purpose public figures requires a public controversy, from which the remaining two factors stem. Davis has not alleged that he injected himself into any public controversy, and the alleged defamatory statements are related to Davis' attempt to deposit a check, not to any public controversy.[2]

Based on Davis' complaint, he is not a public figure. However, my ruling may change at summary judgment depending on evidence obtained during discovery about his fame or notoriety. At this stage of the case, Davis must plead only negligence, and Wells Fargo does not argue that he has not done so. Therefore, I deny Wells Fargo's motion to dismiss Davis' defamation claim.

---

[2] Wells Fargo asks that I take judicial notice of Davis' online social media presence as evidence that Davis is a public figure. ECF No. 26 at 8 n.5. Without deciding whether I may take judicial notice of Davis' internet following, I am not convinced that a certain number of social media followers gives someone such pervasive fame or notoriety that they are a general purpose public figure. And regardless of his internet presence, Davis must have voluntarily injected himself into a public controversy to be a limited purpose public figure. *See Holder v. Bobb*, 797 F. Supp. 3d 134, 147-49 (E.D.N.Y. 2025) (finding that a social media personality with 115,000 Facebook followers was a limited purpose public figure because she intentionally used the platform to inject herself into public conversations, without deciding whether she was a general purpose public figure).

**F.  I dismiss Davis' negligent hiring, supervision, and retention claims.**

Wells Fargo moves to dismiss Davis' negligent hiring, supervision, and retention claim, arguing negligent hiring and negligent supervision and retention are two separate claims and Davis has not sufficiently pleaded either.  Davis does not respond to Wells Fargo's contention that he failed to state a claim for negligent hiring, so he has effectively conceded that I should dismiss that claim. Local Rule 7-2(d).  He argues that he has sufficiently pleaded a negligent supervision and retention claim.

A claim for negligent supervision and retention requires a plaintiff to allege that an employer breached its duty to ensure that "employees are fit for their positions." *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996).  The plaintiff must allege facts specifically indicating how the employer violated this duty, and the "fact that an employee acts wrongfully does not in and of itself give rise to a claim for negligent hiring, training, or supervision." *Colquhoun*, 2010 WL 2346607, at *3.

Davis fails to allege sufficient factual allegations to establish a plausible claim that Wells Fargo violated its duty to supervise its employees.  His allegations are either conclusory or describe improper behavior by Parra and Bell.  But the fact that employees acted wrongfully does not raise a claim of negligent supervision and retention against Wells Fargo.  Davis' opposition merely reiterates his allegations that Parra and Bell acted improperly and concludes that their misconduct "demonstrates how Wells Fargo has failed to properly train and supervise its employees." ECF No. 25 at 22.  Similarly, he states that the false complaint filed on July 14, 2025 "demonstrates how Wells Fargo failed to properly train and supervise its employees," but he does not explain how and merely concludes the wrongful conduct means there is a claim for negligent training and supervision. *Id.*

18

Therefore, I dismiss Davis's negligent hiring and negligent supervision and retention claims, but I grant Davis leave to amend if he can allege facts that establish how Wells Fargo was negligent in supervising its employees.

**G.  I dismiss without prejudice Davis' gross negligence claim because he has not pleaded a cognizable legal duty.**

Wells Fargo argues that Davis' gross negligence claim should be dismissed because he fails to allege a duty that Wells Fargo owed him.  Davis responds that Wells Fargo owed him a duty of care because of their business-patron relationship.

To state a negligence claim, a plaintiff must allege "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the breach was the legal cause of the plaintiff's injuries, and (4) the plaintiff suffered damages." *DeBoer v. Sr. Bridges of Sparks Fam. Hosp.*, 282 P.3d 727, 732 (Nev. 2012).  Ordinary and gross negligence "are degrees of the same conduct," where gross negligence is a violation of a legal duty "of an aggravated character." *Cornella v. Just. Ct.*, 377 P.3d 97, 102 (Nev. 2016) (quotation omitted).  "Whether a defendant owes a plaintiff a duty of care is a question of law." *Scialabba v. Brandise Const. Co.*, 921 P.2d 928, 930 (Nev. 1996).

Davis claims Wells Fargo owed him a "duty to exercise at least slight care in providing banking services" and in not racially discriminating against its customer. ECF No. 11 at 15.  He does not provide legal support for the existence of a duty of care in providing banking services in his complaint or opposition.  Instead, he raises a duty of care arising from a "special relationship" between Wells Fargo and himself as "businessman-patron." ECF No. 25 at 22-23 (quotation omitted).  However, the duty that arises from the special relationship between a business and a patron is the duty to protect, or a duty of reasonable care regarding risks that arise

19

within the scope of the relationship. *Scialabba*, 921 P.2d at 930-31 (describing the special relationship that arises when someone submits to the control of another, thus creating a duty in the controlling party to take reasonable precautions to protect the other party from assaults by third parties that could reasonably have been anticipated); *Sparks v. Alpha Tau Omega Fraternity, Inc.*, 255 P.3d 238, 245-46 (Nev. 2011); *Charleston Station, LLC v. Stephens*, No. 63943, 131 Nev. 1262, 2015 WL 9480322, at *2-3 (2015); *Bender v. Wenevada, LLC*, No. 86160-DOA, 549 P.3d 518, 2024 WL 2746760, at *3 (Nev. Ct. App. May 28, 2024).  There is no duty to provide banking services within the business-patron relationship, and Davis has not alleged in his complaint that Wells Fargo failed to provide him a duty of reasonable care regarding risks that arose during his visit to the Henderson Wells Fargo branch.  Because Davis has not alleged a cognizable legal duty he was owed, I dismiss his gross negligence claim.  I grant Davis leave to amend if he can plead a cognizable legal duty.

**H.  I dismiss Davis' negligence per se claim with prejudice.**

Wells Fargo contends that Davis' negligence per se claim must be dismissed because it is based on violating a statute that provides a private right of action.  Davis argues that his statutory and negligence per se claims are independent.

To state a claim for negligence per se, a plaintiff must allege that (1) he belongs to a class of persons that a statute was intended to protect, (2) the defendant violated the relevant statute, (3) his injuries are the type against which the statute was meant to protect, (4) the violation was the legal cause of his injury, and (5) he suffered damages. *See Anderson v. Baltrusaitus*, 944 P.2d 797, 799 (Nev. 1997).  Nevada prohibits tort claims where there is an analogous statutory remedy that would provide the same kind of relief for the same kind of conduct. *Sands Regent v. Valgardson*, 777 P.2d 898, 899-900 (Nev. 1989) (declining the plaintiffs a common-law theory

of recovery where the Nevada legislature addressed the extent of the available remedy); *D'Angelo v. Gardner*, 819 P.2d 206, 217-18 (Nev. 1991) (recognizing the rule against permitting an independent tort action when a statutory remedy exists but finding no comprehensive statutory remedy existed). Another judge in this District has applied this rule to dismiss negligence per se claims based on violating a statute that has a private right of action. *Chacon v. State Farm Mut. Auto. Ins. Co.*, No. 2:16-cv-00965-RFB-VCF, 2017 WL 1179945, at *2-3 (D. Nev. Mar. 29, 2017).

Davis' negligence per se claim is based on Wells Fargo violating NRS § 651.090. ECF No. 11 at 15-16. That statute provides a private right of action for violations of NRS § 651.070 and § 651.075, and Davis has pleaded a separate NRS § 651.090 claim. Thus, Davis cannot plead a negligence per se claim for violations of NRS § 651.090. He argues that his negligence per se and NRS § 651.090 claims do not overlap because one court found that NRS § 651.090 does not provide a right to recover damages for construction defects. ECF No. 25 at 15-16 (citing *Long v. Coast Resorts, Inc.*, 32 F. Supp. 2d 1203, 1209 (D. Nev. 1998), *aff'd in part, rev'd in part and remanded*, 267 F.3d 918 (9th Cir. 2001)). Davis has not alleged claims based on a construction defect, and he recognizes that "NRS 651.090 is intended to provide monetary damages for cases of discrimination directed toward specific individuals," which is what he alleges. ECF No. 25 at 15 (quotation omitted).

Davis' negligence per se claim is statutorily preempted, so I dismiss it. Amendment of this claim would be futile, so I do not grant leave to amend. If Davis wishes to bring a negligence per se claim based on a different statute, he will need to file a motion to amend.

**I.  I deny Wells Fargo's motion to dismiss the "Doe" and "Roe" defendants.**

Wells Fargo asks that I dismiss the Doe and Roe defendants.  Wells Fargo argues that, because the complaint "should be dismissed in its entirety," the Doe and Roe defendants should be dismissed as well.  Davis opposes dismissal of the unknown defendants.

When a defendant's identity is unknown prior to filing the complaint, the plaintiff should be given an opportunity to identify the unknown defendant through discovery unless it is clear that discovery will not reveal the identity. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).  Besides arguing that the complaint should be dismissed in its entirety, Wells Fargo has not explained why discovery would not reveal the identity of any unknown defendants. *See* ECF No. 13 at 19.  Because I am not dismissing Davis' entire complaint, I deny Wells Fargo's motion to dismiss the Doe and Roe defendants.

**III.  CONCLUSION**

I THEREFORE ORDER that Wells Fargo's motion to dismiss **(ECF No. 13) is GRANTED in part.**  I dismiss the § 1981, NRS § 651.090, IIED, negligent hiring, supervision, and retention, and gross negligence claims with leave to amend.  I dismiss the negligence per se claim with prejudice.

I FURTHER ORDER that Davis may file an amended complaint raising only the claims for which I granted leave to amend, addressing the deficiencies identified in this order, by June 30, 2026.  Failure to file an amended complaint by that date will result in only the defamation per se claim proceeding.

DATED this 9th day of June, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

22